UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

St. Jude Medical S.C., Inc.,

        Plaintiff,

v.                                                                          Civil No. 09-738 (JNE/JSM)
                                                                            ORDER
Mark Ord and Boston Scientific Corporation,

        Defendants.

---

Edward F. Fox, Esq., Paula M. Semrow, Esq., and Jeffrey R. Mulder, Esq., Bassford Remele, PA, appeared for Plaintiff St. Jude Medical S.C., Inc.

Martin S. Chester, Esq., Robert L. Schnell, Jr., Esq., and Julie M. Giddings, Esq., Faegre & Benson LLP, appeared for Defendants Mark Ord and Boston Scientific Corporation.

---

        Plaintiff St. Jude Medical S.C., Inc. (St. Jude), brings this action against Defendants Mark Ord, a former St. Jude employee, and Boston Scientific Corporation, St. Jude's competitor in the cardiac rhythm management (CRM) device industry and Ord's current employer. St. Jude asserts a claim of breach of contract against Ord, a claim of tortious interference with contract against Boston Scientific, and a claim of unjust enrichment against both Ord and Boston Scientific. The case is before the Court on St. Jude's motion for a temporary restraining order and expedited discovery. St. Jude seeks, among other things, to enjoin Ord from violating the non-compete provision of his employment agreement with St. Jude, which limits Ord's ability to contact his former customers. For the reasons below, the Court grants St. Jude's motion.

## I.      BACKGROUND

        On April 29, 2002, St. Jude hired Ord to market and sell its CRM products in the Tucson, Arizona, area for a three-year term. At that time, Ord signed an employment agreement containing a Minnesota choice-of-law clause and a non-compete provision. In February 2005,

Ord and St. Jude executed a written agreement that extended Ord's term of employment for an additional three years, through April 2008, but otherwise left the conditions of Ord's employment unchanged.  Ord became an at-will employee, as provided by his employment agreement, when his specified term of employment expired, and he resigned from St. Jude via e-mail on December 8, 2008.  Shortly thereafter, Ord began work as a CRM sales representative for Guidant Sales Corporation, a wholly-owned subsidiary of Boston Scientific.

St. Jude has submitted affidavits that document alleged instances of Ord violating his non-compete agreement.  Examples of the alleged violations follow:

- According to hearsay evidence recounted in the affidavit of St. Jude sales representative Jeffrey Davis, Ord marketed Boston Scientific CRM products at Pima Heart on January 6, 2009.

- According to hearsay evidence recounted in the affidavits of Davis and St. Jude sales consultant Paul Des Rosier, Ord "turned off" a St. Jude CRM device to prepare a patient for surgery at Tucson Medical Center on January 15, 2009. According to his affidavit, Davis saw Ord at Tucson Medical Center, and Ord informed Davis that he was updating Boston Scientific programmers at that facility and throughout the Tucson area.

- According to his affidavit, Des Rosier observed Ord at the Pima Heart CRM clinic in Green Valley, Arizona, on January 16, 2009.  He states he observed Ord holding a patient's chart and walking a patient out of an examination room.

- According to his affidavit, Des Rosier observed Ord talking with several doctors and other Boston Scientific employees at Tucson Heart Hospital on January 27, 2009.  Des Rosier states he observed Ord hand the doctors and the other Boston Scientific employees Boston Scientific products.

- According to his affidavit, Des Rosier observed Ord at the Tucson VA providing support to a VA doctor during implantation of a CRM device on January 28, 2009.

- According to his affidavit, Des Rosier observed Ord making a sales call to a doctor at the Tucson VA on February 11, 2009.

- According to his affidavit, St. Jude sales representative Manuel Camarena observed Ord supporting implantation of a CRM device at the Tucson VA on March 5, 2009.

- According to his affidavit, Des Rosier had a phone conversation on March 14, 2009, with Boston Scientific employee Sharon Fausel. Des Rosier claims that Fausel admitted that Ord had assisted with a CRM implant on March 13 at the University Medical Center and would do so again on March 14.

- According to his affidavit, Camarena learned of hearsay evidence on March 19, 2009, indicating that Ord had been "supporting the CRM clinic at the [Cochise Cardiovascular Care Center]."

- According to Camarena's supplemental affidavit, Camarena observed Ord preparing to support implantation of a CRM device at the University Medical Center in Tucson on March 24, 2009.

On January 16, 2009, St. Jude sent a letter to Ord informing him that St. Jude's sales force had discovered that Ord had violated his non-compete agreement through his work for Boston Scientific. The letter asked Ord to refrain from violating his non-compete agreement and included a list of Ord's former customers that St. Jude believed were off-limits to him. This letter also appears to have been e-mailed to Boston Scientific; there is no dispute that Boston Scientific reviewed the letter.

On February 19, 2009, St. Jude sent a letter to Boston Scientific asking Boston Scientific to make efforts to prevent Ord from violating his non-compete agreement. This letter also supplemented the list of customers that St. Jude believed were covered by the agreement. Ord received a copy of this letter.

Defendants admit that Ord violated the non-compete agreement by calling on Pima Heart and Tucson Medical Center. They claim that the violations were due to their erroneous but good-faith interpretation of the non-compete agreement and that Ord stopped calling on those facilities when the error was brought to their attention by St. Jude's January 16, 2009, letter.

Ord and Boston Scientific dispute many of the other non-compete violations alleged by St. Jude. In some instances they admit or do not dispute that Ord engaged in the conduct alleged

by St. Jude, and they instead dispute whether the non-compete agreement is applicable to the

hospitals and doctors involved.  For example:

- The declaration of Guidant sales manager Joseph DiPonio indicates that Ord assisted in implantation of a CRM device at the University Medical Center in Tucson on March 13, 2009.  DiPonio's and Ord's declarations indicate that Defendants believe that Ord's non-compete agreement does not prohibit him from calling on the University Medical Center in Tucson.

- The affidavit of Suzanne Baragry, Area Vice President for Guidant, and the declaration of Ord indicate that Defendants believe that Ord's non-compete agreement does not prohibit him from calling on the Tucson VA.  Defendants do not deny that Ord called on the Tucson VA on behalf of Boston Scientific.

- Ord's declaration indicates Defendants believe that Ord's non-compete agreement does not prohibit him from calling on the Cochise Cardiovascular Care Center.  Defendants do not deny that Ord called on the Cochise Cardiovascular Care Center on behalf of Boston Scientific.

Ord and Boston Scientific dispute the factual circumstances of other specific alleged violations.

For example:

- Ord's declaration states that Ord was present at Pima Heart on January 6, 2009, but that he was there to return material related to a St. Jude research study and not to market Boston Scientific CRM products.

- Ord's declaration states that Ord was at Tucson Medical Center on January 15, 2009.  However, according to the affidavit of Guidant sales representative Michael McCormick and Ord's declaration, McCormick—not Ord—turned off the CRM device at Tucson Medical Center on that date.

- Ord's declaration states that Ord was present at Tucson Heart Hospital on January 27, 2009, but that Ord was there on personal business only and did not give Boston Scientific products to anyone at that time.

On or after March 23, 2009, St. Jude filed this action in state court.  St. Jude also filed a

motion for a temporary restraining order and expedited discovery.  Defendants subsequently

removed the action to federal court on March 30, 2009.

## II.    DISCUSSION

To determine whether to grant a motion for a temporary restraining order, a court must consider: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm absent the injunction; (3) the balance between this harm and the harm experienced by other parties if the injunction issues; and (4) the public interest. *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).  Injunctive relief is an extraordinary remedy, *see Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc.*, 815 F.2d 500, 503 (8th Cir. 1987), and the party requesting the injunction bears the "complete burden" of proving they are entitled to such relief, *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).  While no one factor is determinative, likelihood of success on the merits is generally the touchstone inquiry. *Dataphase*, 640 F.2d at 113.

**A.    Likelihood of success on the merits**

Non-compete agreements, though disfavored under Minnesota law, are enforceable if they serve a legitimate interest, such as protection of an employer's good will, and if they are no broader than necessary to serve that interest. *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 361 (Minn. 1998).  Unnecessarily broad restrictions are invalid, and whether a restriction is necessary depends on "the nature and extent of the business, the nature and extent of the service of the employee, and other pertinent conditions." *Bennett v. Storz Broad. Co*., 134 N.W.2d 892, 899 (Minn. 1965).  A court has discretion "to modify unreasonable restrictions on competition in employment agreements by enforcing them to the extent reasonable." *Hilligoss v. Cargill, Inc.*, 649 N.W.2d 142, 147 n.8 (Minn. 2002).

In relevant part,[1] Ord's non-compete agreement states:

> [f]or a period of one (1) year after the date of termination of employment with [St. Jude] for any reason, Employee will not directly or indirectly sell, demonstrate, promote, solicit or support the sale of, support or supervise the implantation or other use of, or otherwise have any involvement with the sale or use of any product which competes with any products which Employee sold or solicited the sale of during the term of Employee's employment, to or with any customer upon whom Employee called during the last year of Employee's employment. For a period of one (1) year after the date of Employee's termination of employment with [St. Jude] for any reason, Employee will not directly or indirectly influence or attempt to influence such customers to direct their cardiac rhythm management business to any competitor of [St. Jude].

The parties do not dispute that Ord's non-compete agreement is valid and enforceable at least in part. Instead, they disagree over which hospitals, practice groups, and doctors are covered by the agreement. Defendants argue that Ord's non-compete agreement is unreasonable because it is broader than necessary for protection of St. Jude's good will. Affidavits submitted by Defendants state that companies in the CRM device industry, including both St. Jude and Boston Scientific, agree that a non-compete agreement does not bar an employee from calling on a former employer's account unless the employee called on that account more than three times in his or her last year with the former employer. Defendants argue that, in light of this industry understanding, the Court should enforce Ord's non-compete agreement only with respect to hospitals and doctors that he called on more than three times during his last year with St. Jude.

Enforcement of non-compete agreements related to the CRM device industry has been a frequent subject of litigation. In *St. Jude Medical S.C., Inc. v. Hasty*, Civ. No. 06-4547, 2007 WL 128856 (D. Minn. Jan 12, 2007) (applying Minnesota law), the court enforced a non-compete agreement that was identical in all material aspects to the portion of Ord's non-compete

---

[1]     Though the non-compete agreement contains additional provisions with broader proscriptions on competitive activity, St. Jude's motion does not rely on those provisions.

agreement that is at issue in the present case without mentioning any required minimum number of contacts with past customers.  At least one court has held that a territorial restriction in the non-compete agreement of a CRM product sales representative was reasonable even when the restriction applied to all of the employer's former customers rather than just the customers personally called on by the employee.  *See Guidant Sales Corp. v. George*, Civ. No. 01-1638, 2001 WL 1491317, at *7 (D. Minn. Nov. 19, 2001) (applying Minnesota law).  In general, courts applying Minnesota law have held that non-compete provisions "limited to preventing solicitation of prior clients [are] reasonable to protect the employer's business."  *Benfield, Inc. v. Moline*, 351 F. Supp. 2d 911, 917 (D. Minn. 2004); *see also Webb Publ'g Co. v. Fosshage*, 426 N.W.2d 445, 450 (Minn. Ct. App. 1988) (indicating that, on remand, the district court should consider whether the non-compete agreement should be construed to limit the employee's contacts with only the customers he had personally served rather than all of the former employer's customers).  Accordingly, the Court is satisfied that the non-compete provision in Ord's employment agreement is reasonable as written.

The Court declines to give effect to the more-than-three-contacts understanding regarding non-compete agreements that Defendants contend is widely accepted in the CRM device industry.  Assuming that this more-than-three-contacts understanding is in fact widely accepted, it is contrary to the plain language of Ord's employment agreement, and, in the absence of strong evidence of the intentions of the contracting parties, the Court will not write that standard into a non-compete agreement that is otherwise reasonable and enforceable on its face.  *See Guidant Sales Corp. v. Niebur*, Civ. No. 01-1775, 2001 WL 1636502, at *7 (D. Minn. Oct. 8, 2001) ("While it may be that such an agreement [regarding non-compete agreements in the CRM device industry] would have facilitated a faster and more collegial resolution to this dispute,

there is no evidence before the Court that the informal process superseded the express terms of the non-compete agreements.").

Alternatively, Defendants appear to suggest that the Court should examine on a case-by-case basis whether enforcement of Ord's non-compete agreement as to specific customers otherwise covered by the agreement is necessary to protect St. Jude's good will. While Minnesota courts have examined the general nature of an employee's contacts or relationship with his or her clients to determine whether non-compete provisions as written are reasonably targeted toward protecting employer good will, *see Webb Publishing*, 426 N.W.2d at 450, Defendants have not identified any case in which a court inquires into the relationships between an employee and his or her former clients to gauge the reasonableness of a non-compete restriction on a case-by-case basis, *cf. Guidant Sales Corp. v. Baer*, Civ. No. 09-358, 2009 WL 490052, at *5 (D. Minn. Feb. 26, 2009) (concluding that the evidence did not establish that the terms of the non-compete agreement applied to certain doctors, not that the agreement was unreasonable as applied to those doctors).

Accordingly, the Court concludes that St. Jude is likely to succeed in proving that Ord's non-compete agreement is valid and enforceable as written, even as to customers that Ord called on three or fewer times during his last year with St. Jude. The Court further concludes that St. Jude has established that Ord plans to act on an erroneous interpretation of the scope of his non-compete agreement, meaning that St. Jude has established that there is real danger that Ord will again violate his non-compete agreement absent an injunction.

B.      **Irreparable harm**

Irreparable harm may be inferred from breach of a valid non-compete agreement if the former employee obtained a personal hold on the good will of the former employer.  *Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 452 (Minn. Ct. App. 2001); *see also Ikon Office Solutions, Inc. v. Dale*, 170 F. Supp. 2d 892, 898 (D. Minn. 2001).  The Court is satisfied that, as a result of his work with St. Jude, Ord is the beneficiary of the good will of St. Jude's customers and that St. Jude faces irreparable harm from continued non-compete violations by Ord.

C.      **Balance of harms**

Regarding the balance of harms, the injunction sought by St. Jude would appear to permit Ord to continue working for Boston Scientific in some capacity, though it is unclear exactly how much of the Tucson CRM device market is covered by Ord's non-compete agreement.  At the hearing, counsel for Defendants represented that Ord is entitled to at least some measure of guaranteed compensation.  As noted above, absent an injunction, St. Jude faces the threat of irreparable harm.  The Court concludes that the balance of harms favors St. Jude.

D.      **Public interest**

Finally, the public interest is served by upholding parties' contractual obligations, *see N.I.S. Corp. v. Swindle*, 724 F.2d 707, 710 (8th Cir. 1984), and Minnesota law permits use of non-compete agreements to protect an employer's good will, *see Alside, Inc. v. Larson*, 220 N.W.2d 274, 280 (Minn. 1974).

### III.    CONCLUSION

Based on the limited record available at this early stage of litigation, the Court concludes that St. Jude is entitled to a temporary restraining order.  Therefore, IT IS ORDERED THAT:

1.    Defendants' motion for a temporary restraining order is GRANTED to the extent herein indicated.

2.    Ord shall not directly or indirectly sell, demonstrate, promote, solicit or support the sale of, support or supervise the implantation or other use of, or otherwise having any involvement with the sale or use of any product which competes with any products which Ord sold or solicited the sale of during the term of Ord's employment with St. Jude, to or with any customer upon whom Ord called during the last year of his employment with St. Jude.  Ord shall not directly or indirectly influence or attempt to influence such customers to direct their cardiac rhythm management business to Boston Scientific or any other competitor of St. Jude.

3.    For the purposes of Paragraph 2 of this Order, "customer upon whom Ord called during the last year of his employment with St. Jude" includes, without limitation, the following entities and physicians: Tucson VA; University Medical Center, Tucson; Pima Heart; Tucson Heart Hospital; Tucson Medical Center; Northwest Medical Center; Tucson Heart Group; Carondelet St. Mary's Hospital Health Center; Carondelet St. Joseph's Hospital Health Center; Desert Cardiology; Dr. James Evans; Dr. Sergio Thal; Dr. Marius Wagner; Dr. Peter Ott; Dr. Michael Jerman; Dr. Tedd Goldfinger; Dr. Darren Peress; Dr. Jerrold Winter; Dr. Paul Bejarano; Dr. Santiago Ramirez; Dr. Lionel Faitelson; Dr. Dietmar Gann; Dr. Fraiser Richards; Dr. Gregory Koshkarian; Dr. Heriberto Gutierrez; Dr. Iyengar Hrishikesh; Dr. Gordon Watson; Dr. Elizabeth Attig; Dr. Jason Stimmer; Dr. Craig A. Hoover; Dr. Huang Thai; Dr. Julia Indik; Dr. Richard Callahan; Dr. Ajay Tuli; Dr. Greg Pennock; Dr. Monty C. Morales; Dr. Stephen S. Algeo; Dr. Gerald Wolff; Dr. Beth Malasky; Dr. William Thomas; Dr. Charles A. Katzenberg; Dr. Mark Goldberg; Dr. Lou L. Lancero; Dr. Salvatore J. Tirrito; Dr. Lawrence P. Temkin; Dr. John E. Boulet; Dr. Jose J. Fernandez; and Dr. Nicole Gastellum.

4.    This Order shall take effect on St. Jude's posting of security in the amount of $50,000.

5.    Unless otherwise ordered, this Order shall expire ten days after its entry.

6.      The parties may contact the magistrate judge regarding whether expedited
        discovery should be conducted.

Dated:  April 10, 2009

                                                s/  Joan N. Ericksen
                                                JOAN N. ERICKSEN
                                                United States District Judge